In Re: Jimmy EATON and Evans BENTON
*v.* SUPREME COURT OF ARKANSAS
COMMITTEE ON PROFESSIONAL CONDUCT

80-4                                         607 S.W. 2d 55
Supreme Court of Arkansas
Opinion delivered October 6, 1980

*Eaton & Benton* and *Robert J. Brown*, for petitioners.

*Philip E. Dixon*, for respondents.

Frank Holt, Justice. Petitioners, attorneys practicing law in North Little Rock, appeal from the decision of the respondents' issuance of a private reprimand as a result of the

attorneys' actions in advertising their firm.

In March, 1979, the petitioners contracted with Val-Pak Advertising to include an advertisement of their firm in a mail-out packet with other advertisements to a target area of 10,000 households in the North Little Rock area. Their advertisements was so mailed in June. Petitioners subsequently received a letter from the respondent Committee advising a complaint had been made to it in regard to this advertisement. Petitioners responded to this letter as requested. They received another letter from the Committee, advising them their advertisement was in violation of the Code of Professional Responsibility, DR 2-101 (B). This letter contained the reprimand. A third letter from the Committee, in response to a request by petitioners for a more specific statement, again advised the contents of the ad and the method of making it known to the public violated the purpose and intent of DR 2-101 (B). Petitioners requested a hearing, which was held in November. In December, 1979, the Committee notified the petitioners that they had voted to sustain the letter of reprimand for violation of DR 2-101 (B). The letter advised that the violation of this section also encompassed DR 2-101 (A), 2-103 (A); the letter also cited 2-101 (B) (25) specifically and added DR 2-104 (A). As we understand from oral argument, the latter rule is no longer involved.

Our rule 2-101 (B) permits advertising "[i]n order to facilitate the process of informed selection of a lawyer by potential consumers of legal services." This section incorporates by reference 2-101 (A) which probhitis "the use of any form of public communication containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim." Also 2-103 is included by reference. 2-103 (A) prohibits a lawyer, except as provided in 2-103 (B), from recommending employment of himself or firm to a non-lawyer who has not sought his advice concerning a lawyer.

The petitioners rely heavily on *Bates* v. *State Bar of Arizona*, 433 U.S. 350 (1977), to support their contention the advertisement itself was permissible. The following advertisement was considered by the court in *Bates*:

ADVERTISEMENT

# DO YOU NEED
# A LAWYER?

## LEGAL SERVICES
## AT VERY REASONABLE FEES

* Divorce or legal separation--uncontested
  (both spouses sign papers)

  $175 00 plus $20 00 court filing fee

* Preparation of all court papers and instruc-
  tions on how to do your own simple
  uncontested divorce

  $100 00

* Adoption--uncontested severance proceeding

  $225 00 plus approximately $10 00 publica-
  tion cost

* Bankruptcy--non-business, no contested pro-
  ceedings

  Individual
  $250 00 plus $55 00 court filing fee

  Wife and Husband
  $300 00 plus $110 00 court filing fee

* Change of Name

  $95 00 plus $20 00 court filing fee

Information regarding other types of cases
furnished on request

### Legal Clinic of Bates & O'Steen

617 North 3rd Street
Phoenix, Arizona 85004
Telephone (602) 252-8888

578

Here the advertisement is:

The mailing packet or envelope reflects:

Although the advertisements are in some respect similar, the one in *Bates* listed specific services and their corresponding fees. Here the only fee listed was a $10 fee for an initial consultation, which is permissible under DR 2-101 (B) (20). However, the petitioners then propounded a series of questions on the need for legal services on certain subjects. They contend the queries were merely designed to indicate the areas of law in which they would consult. Also the last query, "Other legal problems?", coupled with the phrase, "There is no time or subject limitation," could indicate to the lay person that these petitioners were competent to consult and advise on any legal problem. We fail to see how this broad sweep, without any indication of charges, is sufficient information to assist one in need of legal services to make an informed selection.

We also agree with the Committee that the manner of dissemination is impermissible. This advertisement was included in a packet with other advertisements, but all three being coupons for discounts at local businesses. The mail-out packet included a coupon for french fries with the purchase of a hamburger, coupons for discounts on meals at local restaurants, a discount from a "Figure Salon and Health Spa" on a one month membership, a discount on tune-ups and auto repairs, a gift certificate from a local shoe store and one from a fabric store, both requiring purchases, a coupon from a travel company offering a free item, a coupon offering a special on seamless guttering, an advertisement from Val Pak itself, and an advertisement for a free home appraisal and a "garage sale" sign from a real estate company. The front of the envelope, previously reproduced, had printed on it "Valuable coupons from local businesses." The mail-out advertisement certainly could be understood by a recipient as appearing to be a discount offer and a solicitation of legal services.

Furthermore, it was in violation of the rule requiring such advertisements to be informative in ntaure, 2-101 (B), as noted above. Its primary purpose was not to inform the consumer to facilitate an informed choice by allowing fee comparison, but rather to urge a group of specific potential consumers to seek petitioners' services, and therefore, this con-

stituted solicitation. See *In the Matter of Koffler*, 420 N.Y.S. 2d 560 (1979). The advertisement in *Bates* listed fees for certain services, which is permissible under our rules. DR 2-101 (B) (25). In *Bates*, Justice Blackmun, writing for the court, acknowledged that the "heart of the dispute before us today is whether lawyers also may constitutionally advertise the *prices* at which certain routine services will be performed." The court held that advertising by attorneys is subject to limitations, which preclude false, deceptive or misleading advertising; there may also be reasonable restrictions on the time, place and manner of advertising. The advertisement here did not meet the stated purpose of advertising legal services, in that there was no indication to the consumer how these petitioners were competitive other than their initial consultation fee. The contract between petitioners and Val Pak provided that no competitors' advertisements would be sent in the same mailing packet without the permission of the petitioners. As the Committee stated: "This provision clearly shows that the intent of the ad was to solicit customers for the individual advertisers, not to provide potential consumers of legal services with a means of making an informed selection of an attorney. It also suggests that the ad is merely a lure to get customers into the advertiser's place of business."

We have considered the cases cited by petitioners in their brief which are concerned with advertisements and offers by mail. *In re Primus*, 436 U.S. 412 (1978); *Kentucky Bar Ass'n* v. *Stuart*, 568 S.W. 2d 933 (Ky. 1978); and *In the Matter of Koffler, supra*. In *Primus*, also relied on heavily by petitioners, the court specifically found the letter there was not "facially misleading" and that it imparted information allowing the recipient to make an informed decision about whether or not to authorize the litigation in question. The court there again stated that a state "is free to fashion reasonable restrictions with respect to the time, place, and manner of solicitation by members of its Bar . . . The State's special interest in regulating members of a profession it licenses, and who serve as officers of its courts, amply justifies the application of narrowly drawn rules to proscribe solicitation that in fact is misleading, overbearing, or involves other features of deception or improper influence." Here we find that a combination

of the content and the manner of dissemination in this case constitutes a violation of our rules.

We next consider petitioners' contention that there was a lack of notice and therefore due process in that the petitioners were not advised of the particulars of their violation, only being notified that the advertisement violated DR 2-101 (B). This rules incorporates by reference 2-101 (A) and 2-103.

We need not reach the sufficiency of notice issue since the petitioners have failed to include in the record and to abstract the letter sent to them in August advising them that a complaint had been lodged against them with the Committee alleging violation of the ethical rules governing advertising by lawyers and, further, insufficiently abstracting the September letter sent by the Committee. See *Manes* v. *M.O.V.E., Inc., et al*, 261 Ark. 793, 552 S.W. 2d 211 (1977); and Rules of the Supreme Court, Rule 9.

Even if we were to consider this issue on its merits, we do not find reversible error since petitioners have not demonstrated in what manner they have been prejudiced. They contend that, had they known in more detail the charges and the name of the complainant, they could have introduced evidence from satisfied clients and through cross-examination shown that this advertisement was not misleading. However, in *Ohralik* v. *Ohio State Bar Assn.*, 436 U.S. 447 (1978), the Supreme Court held:

> [A]ppellant errs in assuming that the constitutional validity of the judgment below depends on proof that his conduct constituted actual overreaching or inflicted some specific injury on [the clients solicited]. His assumption flows from the premise that nothing less than actual proved harm to the solicited individual would be a sufficiently important state interest to justify disciplining the attorney who solicits employment in person for pecuniary gain.
>
> Appellant's argument misconceives the nature of the State's interest. The Rules prohibiting solicitation

are prophylactic measures whose objective is the prevention of harm before it occurs . . .

Although the case here did not involve person to person solicitation as occurred in *Ohralik*, we find the above language to be applicable.

Furthermore, there is no requirement that the original complaint filed against an attorney be furnished him, as petitioners contend. Neither the rules nor case law so requires. Rule III, relied on by petitioners, makes it the duty of the Executive Secretary of the Committee to assist a complainant in preparing a detailed complaint in affidavit form. This rule then provides the Executive Secretary shall furnish a copy of the formal complaint to the attorney complained against. However, here the Committee had before it the advertisement which formed the basis of the complaint and thus had independent knowledge of the alleged misconduct. Rule IV provides that the Committee shall investigate complaints as to which any member has information and shall give the attorney an opportunity to explain or refute the charge. In *Weems* v. *Sup. Ct. Comm. on Prof. Conduct*, 257 Ark. 673, 523 S.W. 2d 900 (1975), we rejected an argument that Rule IV requires an affidavit of complaint or a statement that a member of the Committee had information. We held an affidavit is not required before the Committee may investigate and a statement of the source of information is not required.

Finally, we find no violation of the First Amendment to the United States Constitution nor to Article 2, § 6, of the Arkansas Constitution, as petitioners urge. The Supreme Court, in *Bates*, specifically allowed the states to regulate the manner, time and place of advertising. This right was affirmed in *Ohralik*:

> . . . A lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns. It falls within the State's proper sphere of economic and professional regulation . . . While entitled to some constitutional protection, appellant's conduct is subject to regulation in furtherance of important state interests.

Further, this court was well aware of federal and state constitutional requirements when it adopted the disciplinary rules.

Affirmed.