In re UTAH STATE BAR PETITION FOR APPROVAL OF CHANGES IN DISCIPLINARY RULES ON ADVERTISING.

No. 18024.

Supreme Court of Utah.

May 7, 1982.

Dean W. Sheffield, Salt Lake City, for State Bar.

OAKS, Justice:

Following the United States Supreme Court's decision that the free speech protections of the Constitution prevent the states from entirely prohibiting truthful advertising of the availability and price of legal services, *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), this Court adopted changes to the Disciplinary Rules under Canon 2 of the Code of Professional Responsibility that permitted limited advertising by lawyers in newspapers. Thereafter, in 1979, the Court ruled that there was no reasonable basis upon which to allow advertising in newspapers and to deny that right as to radio, television, magazines, and trade journals. The Court therefore directed the Bar to submit revised rules that would not discriminate among the various information media. *In re Application to Allow Advertising by Electronic Media*, No. 16347, filed May 21, 1979. In June, 1979, the Bar proposed an interim rule, but the Court took no action.

On October 7, 1981, the Bar submitted an entirely revised version of the Disciplinary Rules under Canon 2, including the subject of advertising by lawyers. The proposed changes from the rules adopted in 1977 are set out in the Appendix. Aside from minor editorial amendments, the substantive changes are in DR 2–101(A) through (I), DR 2–102(A), and DR 2–105. The Bar petitioned for adoption of these revised rules. Brian M. Barnard, a member of the Bar, filed objections, summarized hereafter. The Court heard oral arguments and received briefs on the Bar's petition and the objections and supplemental memoranda on the United States Supreme Court's closely related decision in *In re R— M. J—*, —— U.S. ——, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982).

We approve the proposed revision of the Disciplinary Rules under Canon 2, with the modifications and for the reasons described hereafter.

## I.

■ Our authority to act in this matter stems from the judicial power conferred on this Court by Article VIII, § 1 of the Utah Constitution. Inherent in that judicial power is the power to regulate the practice of law. *In re Integration and Governance of the Utah State Bar*, Utah, 632 P.2d 845 (1981); *Ruckenbrod v. Mullins*, 102 Utah 548, 559–60, 133 P.2d 325, 330, 144 A.L.R.

839 (1943). *Accord, Berberian v. New England Telephone & Telegraph Co.*, 114 R.I. 197, 330 A.2d 813 (1975); *In re Patton*, 86 N.M. 52, 519 P.2d 288, 290 (1974); *In re Integration of Nebraska State Bar Association*, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151 (1937); *In re Opinion of the Justices*, 279 Mass. 607, 180 N.E. 725, 81 A.L.R. 1059 (1932). In this instance, we exercise our rule-making powers, rather than our powers to resolve a specific case or controversy on an evidentiary record.

## II.

The objector contends that the Bar's proposal is at odds with our May, 1979, direction against discrimination among the various information media because it allows advertising by newspaper or electronic media while prohibiting advertising by billboards, direct mail, circulars, and the use of promotional items like matchbooks and inscribed pencils and pens. (DR 2–101(C) and (H)). He argues that even tasteful advertising in the programs of the Utah Symphony and the Repertory Dance Theatre, which he has done in the past, would be prohibited by the proposed rules. The objector requests that the Court decline to approve the Bar's proposal, and direct instead that, in light of the United States Supreme Court's recent decision *In re R— M. J—, supra*, the Bar propose new revisions which restrict only advertising that is inherently false, deceptive, or misleading.

The state obviously has a substantial and compelling interest in protecting the public from false, deceptive, or misleading advertising, *Bates v. State Bar of Arizona*, 433 U.S. at 383, 97 S.Ct. at 2708, and from those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching, and other forms of vexatious conduct. *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 462, 98 S.Ct. 1912, 1921, 56 L.Ed.2d 444 (1978). But we believe these are not the only substantial state interests in advertising by lawyers. In our May, 1979, order directing the Bar to re-submit rules to enlarge the scope of advertising, we stated:

Such revision of the rules should include provisions and restrictions which will guard against the making of common, cheap or undignified claims and be limited to such representations as will, to the greatest degree possible, harmonize with the purpose of maintaining the high standards of dignity and professionalism appropriate to the practice of law and the administration of justice.

*In re Application to Allow Advertising by Electronic Media, supra.* We reaffirm that principle, and add our specific finding that the state of Utah has a substantial interest in maintaining high standards of dignity and professionalism in the manner in which attorneys, who are the officers of its courts, present themselves to the public and perform their important functions in the practice of law and the administration of justice.

We find nothing to the contrary in the three United States Supreme Court decisions that have defined the newly recognized free speech interest in advertising by lawyers.

*Bates v. State Bar of Arizona, supra*, upset a prohibition against any advertising of the price and availability of routine legal services. The Court rejected arguments that any advertising would undermine the attorney's sense of dignity and self-worth, erode clients' trust in attorneys, and tarnish the dignified public image of the profession. But the Court did not state or imply that these considerations were unimportant—only that they did not rise to the level of an acceptable justification "for the suppression of all advertising by attorneys." 433 U.S. at 379, 97 S.Ct. at 2706. The Court even quoted approvingly from an earlier case which acknowledged that "[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" 433 U.S. at 361–62, 97 S.Ct. at 2697–98. The Court concluded its opinion by cautioning that "[a]s with other varieties of speech, it follows as well that there may be reasonable restrictions on

the time, place, and manner of advertising." 433 U.S. at 384, 97 S.Ct. at 2709.

In *Ohralik v. Ohio State Bar Association, supra,* the Court upheld the indefinite suspension of a lawyer who had violated state rules against in-person solicitation of prospective clients. In rejecting contentions that these rules constituted an impermissible interference with commercial speech under the rule. in *Bates,* the Court distinguished informational advertising from the pressures and dangers involved in in-person solicitation, and also relied on what it called the state's "special responsibility for maintaining standards among members of the licensed professions." 436 U.S. at 460, 98 S.Ct. at 1920. "While lawyers act in part as 'self-employed businessmen,'" the Court observed, "they also act 'as trusted agents of their clients, and as assistants to the court in search of a just solution to disputes.'" *Id.* The Court agreed that protecting the public from the unfavorable aspects of solicitation was a legitimate and important state interest.

The Court's most recent decision, *In re R— M. J—,* —— U.S. ——, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982), invalidated Missouri rules that (1) limited lawyer advertising to specifically prescribed types of information published only in newspapers, periodicals, and the yellow pages of telephone directories, and (2) limited professional announcements to cards briefly describing changes of name or address, which could be sent only to lawyers, current and former clients, personal friends, and relatives. The lawyer disciplined in that case had advertised in newspapers and the yellow pages, describing his areas of practice in different terms than the categories prescribed in the rules, and had also mailed professional announcements to a list of addresses going beyond the groups authorized in the rule. In reversing the discipline imposed for this violation, the Supreme Court concluded that the Missouri rules were unconstitutionally broad since the state had asserted no substantial interest in such extensive prohibitions on the free flow of commercial speech about the practice of law.

Although acknowledging that the state's principal interest was in preventing advertising that was false, deceptive, or misleading, the Court nevertheless acknowledged the possibility of other interests, not proven or asserted in that case:

> Even when a communication is not misleading, the state retains some authority to regulate. But the state must assert a substantial interest and the interference with speech must be in proportion to the interest served. [Citation omitted.] Restrictions must be narrowly drawn, and the state lawfully may regulate only to the extent regulation furthers the state's substantial interest.

102 S.Ct. at 937–38.

> We emphasize, as we have throughout the opinion, that the States retain the authority to regulate advertising that is inherently misleading or that has proven to be misleading in practice. There may be other substantial state interests as well that will support carefully drawn restrictions. But although the states may regulate commercial speech, the First and Fourteenth Amendments require that they do so with care and in a manner no more extensive than reasonably necessary to further substantial interests.

102 S.Ct. at 939.

■ We find in these three decisions a direction that any restriction on lawyer advertising must be justified by a substantial state interest and that the restriction must be narrowly drawn so that any interference with free speech is proportional to the state interest involved. In addition, in its first decision recognizing free speech protections for commercial speech, the Supreme Court stressed that restrictions on the time, place, and manner of protected speech may be valid where they "leave open ample alternative channels for communication of the information." *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976) (invalidating statute prohibiting prescription drug advertising by pharmacists). These principles govern our consideration of the proposed revisions of

the Disciplinary Rules and the objections thereto.

## III.

■ By allowing lawyer advertising in all "public communications media," the proposed revision of DR 2–101(A) leaves open such extensive alternative channels for communication of information about legal services that it is not subject to the general objection that invalidated the rules in *Bates* or *R— M. J—*. However, we agree with the objector that the rule sweeps too broadly by appearing to prohibit advertising in the printed programs of public events like cultural activities, which programs are indistinguishable in principle (for this purpose) from newspapers or other periodicals. To clarify that latitude and to sharpen the distinction between "public communications media" and professional announcements, discussed below, we amend DR 2–101(A), "Publicity and Advertising," as follows (deletion noted; addition underlined):

A lawyer may advertise services through public communications media such as a ~~professional announcement,~~ telephone directory, legal directory, newspaper or other periodical, radio or television, through professional announcements, and through printed programs for events available to the public. A lawyer shall not make any false, fraudulent or misleading statement about the lawyer or the lawyer's services to a client or prospective client. The foregoing shall be subject to the further provisions of this Rule 2–101 and the provisions of DR 2–102 through DR 2–105.

## IV.

■ The restrictions on advertising contained in proposed DR 2–101(B), (D), (E), (F), (G), and (I) are appropriate and necessary to effectuate the substantial state interests in avoiding false, deceptive, or misleading advertising, in maintaining the high standards of dignity and professionalism required for officers of the courts in the practice of law and the administration of justice, and in enforcing the rules designed to protect those interests. These revisions are adopted as proposed.

## V.

■ The time, place, and manner restrictions on lawyer advertising contained in DR 2–101(C), such as the prohibition on the use of billboards, circulars, matchbooks, and inscribed pencils and pens challenged by objector, are appropriate and necessary to serve the substantial state interest in maintaining the high standards of dignity and professionalism required for officers of the courts in the practice of law and the administration of justice. In the context of the alternative channels available under other rules, these restrictions pose no significant barrier to the communication of needed information about legal services. It is so held in *In re Petition for Rule of Court Governing Lawyer Advertising*, Tenn., 564 S.W.2d 638, 644 (1978); *Bishop v. Committee on Professional Ethics*, 521 F.Supp. 1219, 1230, 1232 (S.D.Iowa, 1981) ("dignified" not unconstitutionally vague), and we agree. The objections are not well taken. This subsection is adopted as proposed.

## VI.

■ DR 2–101(H) reads as follows:
Except as permitted under DR 2–103 and 2–104, in-person, direct mail, and similar direct forms of contact with a prospective client by a lawyer for the purpose of soliciting business, are prohibited.

In company with DR 2–102(A), which forbids lawyers or law firms from using professional cards or announcements in violation of DR 2–101(A) and (B), the above-quoted subsection in effect prohibits mailing professional cards or announcements to prospective clients, even where the information they contain is not false, deceptive, or misleading. The objector maintains that this subsection's prohibition of all "direct mail" contacts with prospective clients by professional cards or announcements is contrary to the United States Supreme Court's ruling in *R— M. J—*. 102 S.Ct. at 939. We agree. The substantial state interests discussed here are not jeopardized by the di-

rect mailing of professional cards or announcements to prospective clients, nor, we suppose, by the direct mailing of information in some other forms. *Koffler v. Joint Bar Association*, 51 N.Y.2d 140, 432 N.Y.S.2d 872, 412 N.E.2d 927 (1980). Consequently, we strike the words "direct mail" from proposed DR 2–101(H), and adopt the balance of the subsection as proposed.

In order to obtain the needed reconsideration of the whole subject of direct mail advertising in light of *R— M. J—* and the other cases cited below, we remand this question to the Board of Bar Commissioners with the direction that they re-submit revised rules on the subject of direct mail advertising, including the circulation of professional cards and announcements. *See In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); *Eaton v. Supreme Court of Arkansas*, 270 Ark. 573, 607 S.W.2d 55 (1980); *Kentucky Bar Association v. Stuart*, Ky., 568 S.W.2d 933 (1978); *Allison v. Louisiana State Bar Association*, La., 362 So.2d 489 (1978); *In re Appert*, Minn., 315 N.W.2d 204 (1981); *Koffler v. Joint Bar Association, supra; In re Greene*, 78 A.D.2d 131, 433 N.Y.S.2d 853 (1980); *Bishop v. Committee on Professional Ethics*, 521 F.Supp. at 1230–32.[1] *See generally,* L. Andrews, "Lawyer Advertising and the First Amendment," 1981 *A.B.F.Res.J.* 967. Pending our adoption of rules on that subject, the circulation of professional cards and announcements to prospective clients is permissible, subject to the provisions of Rule DR 2–101, but other direct mail advertising is prohibited.

## VII.

The provisions of DR 2–102(A) and (C) through (F), DR 2–103, DR 2–104, DR 2–105, and DR 2–106 are appropriate and necessary to effectuate the substantial state interests identified above. These rules are adopted as proposed.[2]

## VIII.

■ Referring to the prohibition in the first sentence of DR 2–102(B) against practicing law "under a trade name,"[3] the objector contends that there is no rational basis in terms of misleading the public for prohibiting the practice of law under a name like "Salt Lake Legal Clinic" when the rule permits law firms to practice law under the names of partners long deceased. The use of trade names was permitted in *In re Conduct of Shannon*, Or., 638 P.2d 482 (1982), and *Jacoby v. State Bar*, 19 Cal.3d 359, 138 Cal.Rptr. 77, 562 P.2d 1326, 1331 (1977). There is support for the *constitutionality* of rules prohibiting the use of trade names in the practice of a profession. *Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979) (optometry); *In re Oldtowne Legal Clinic*, 285 Md. 132, 400 A.2d 1111 (1979) (law). Be that as it may, as a matter of wise rule-making in the public interest, we think there are substantial reasons to doubt the wisdom of DR 2–102(B)'s flat prohibition against practicing law under a trade name and the soundness of the distinctions by which that rule is

---

1. *See also* American Bar Association Model Rules of Professional Conduct Rule 7.2(a) (Final Commission Draft, 1981) ("... a lawyer may advertise services through ... written communication not involving personal contact.").

2. In connection with DR 2–105(A)(2), we note that the Court has recently approved and promulgated the Attorney Specialization Plan recommended by the Utah State Bar. *In re Board of Commissioners*, No. 17730 (filed March 5, 1982).

3. In terms essentially identical to the Disciplinary Rule adopted by the American Bar Association, DR 2–102(B) begins as follows:

A lawyer in private practice shall not practice under a trade name, a name that is misleading as to the identity of the lawyer or lawyers practicing under such name, or a firm or corporation name containing names other than those of one or more of the lawyers in the firm, except that the name of a professional corporation or professional association may also contain "P.C." or "P.A." or similar symbols indicating the nature of the organization, and if otherwise lawful a firm may use as, or continue to include in, its name the name or names of one or more deceased or retired members of the firm or of a predecessor firm in a continuing line of succession....

currently administered.[4] While leaving that rule in effect as previously approved, we therefore withhold renewed approval and remand this question to the Board of Bar Commissioners with the direction to submit a revised rule on this subject.

To improve the profession's service to the public, the subject of advertising of legal services is undergoing great changes. As courts, individual lawyers, and the organized Bar puzzle over the difficult legal, ethical, and practical problems associated with the needed changes, it is gratifying to see the quality of effort being devoted to this task. The changes proposed by the Board of Bar Commissioners and the memoranda and briefs submitted by Bar Counsel and the objector in this matter have been extraordinarily helpful, and the Court expresses its gratitude to all involved.

The Petition of the Utah State Bar is granted. As modified herein, the proposed Disciplinary Rules are adopted, and the subjects of direct mail advertising and practicing law under a trade name are remanded to the Bar for the additional re-submissions identified herein not later than November 1, 1982.

*So ordered.*

HALL, C. J., and HOWE, J., concur.

DURHAM, Justice: (concurring and dissenting).

I concur in the action taken by the Court in the main opinion, but take exception to those portions of Sections II, IV and V which rely upon the rationale that "dignity" provides an appropriate standard by which to regulate the commercial communications of attorneys. I do not agree with the suggestion in Part II that the interest of the State of Utah in "maintaining high standards of dignity" within the legal profession is the kind of "substantial interest" discussed in *Matter of R— M. J—*, —— U.S. ——, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982).

As Justice Oaks' opinion notes, that decision does leave the door open for regulation of non-misleading communications where a substantial interest is shown and where the restrictions are so narrowly drawn as to be directly proportional to the interest served. However, although attorneys are officers of the court, and may be held by the courts themselves to certain standards in all of their relations with the courts, it is difficult to perceive how any interest of the public may be served by restrictions designed to enforce "dignity," even assuming such restrictions could be properly drawn. Furthermore, while it is true that the Supreme Court has not specifically excluded "dignity" as a substantial state interest, its opinion in *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), does not lend support to the proposition that such an interest will pass constitutional muster. The appellees in that case argued that an absolute advertising prohibition was needed to protect against "practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous," and that "advertising is repugnant to the dignity of the profession. The ethics of the legal profession forbid that an attorney should advertise his talents or his skill, as a shopkeeper advertises his wares." See Briefs and Appearances of Counsel, 53 L.Ed.2d 1261–1262. The following language in the Court's opinion clearly suggests rejection of that "dignity" argument:

> Moreover, the assertion that advertising will diminish the attorney's reputation in the community is open to question. Bankers and engineers advertise, and yet these professions are not regarded as undignified. In fact, it has been suggested that the failure to advertise creates public disillusionment with the profession. [Citations omitted.]

   \*     \*     \*     \*     \*     \*

---

**4.** We note that the latest draft of the American Bar Association's proposed Model Rules of Professional Conduct provides that "[a] trade name may be used by a lawyer in private practice," subject to specified exceptions. Rule 7.5(a) (Final Commission Draft 1981). The accompanying Comment states that "use of such names in law practice is acceptable so long as it is not misleading."

It appears that the ban on advertising originated as a rule of etiquette and not as a rule of ethics. Early lawyers in Great Britain viewed the law as a form of public service, rather than as a means of earning a living, and they looked down on "trade" as unseemly. Eventually, the attitude toward advertising fostered by this view evolved into an aspect of the ethics of the profession. But habit and tradition are not in themselves an adequate answer to a constitutional challenge. In this day, we do not belittle the person who earns his living by the strength of his arm or the force of his mind. Since the belief that lawyers are somehow "above" trade has become an anachronism, the historial foundation for the advertising restraint has crumbled. [Citations omitted.]

433 U.S. 350, 369, 372, 97 S.Ct. 2691, 2701, 2703, 53 L.Ed.2d 810. It is true, of course, that the "dignity" argument was used in *Bates* in support of an overbroad, absolute ban on advertising. However, there is no language in *Bates* or later cases which suggests that the Court will have any more sympathy for dignity as a state interest even if the restrictions are narrowly drawn. In *Ohralik v. Ohio State Bar*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), the Court pointed out that ". . . to the extent that the ethical standards of lawyers are linked to the service and protection of clients, they do further the goals of 'true professionalism,' " thus implying the necessity of a direct relationship between any ethical restrictions and the needs of clients. It is difficult to articulate how clients or potential clients may be served by restrictions related to the subjective question of dignity in advertising.

Even assuming that the state may establish a legitimate and substantial interest in regulating advertising by a "dignity" stan-

dard, *Matter of R— M. J—* makes it clear that some kind of a factual record establishing the existence of abuse or potential abuse must exist and that any regulation must follow the least restrictive path necessary to prevent the harm. Once again, it appears unlikely that the question of "dignity" can be handled with the kind of narrow and clearly defined treatment which *R— M. J—* requires. There are many members of the profession who continue to believe that some of the practices specifically permitted in *Bates* and *R— M. J—* detract from the "dignity and professionalism" of those lawyers who undertake them, and from the public's perception of the dignity of members of the Bar generally. In some instances, I share that view. It is unclear, then, how we may legitimately impose subjective standards for "dignity" in a fair, objective manner.[1] In the notes to its proposed final draft of the Model Rules of Professional Conduct, the ABA's Commission on Evaluation of Professional Standards commented as follows:

Rule 7.1 does not continue the requirement of DR 2–102(A) that communications about legal services be "dignified." Whether a statement or its form is dignified is a matter of purely subjective judgment. Such a requirement serves no interest recognized by the Supreme Court as a legitimate basis for regulating advertising.

I agree with this analysis, and expect that those of us who would like to ensure that all of the communications of our professional colleagues comport with our own sense of "dignity" and "professionalism" are pursuing a chimeric and ultimately unconstitutional goal.

STEWART, J., concurs in the concurring and dissenting opinion of DURHAM, J.

---

1. The majority opinion cites *Bishop v. Committee on Professional Ethics, Etc.*, 521 F.Supp. 1219 (1981), which discusses this issue briefly. Without analysis, the Iowa Federal District Court, in that case, dismissed a constitutional challenge for vagueness to a "dignified" standard in the Iowa rules by observing: "A lawyer should have little difficulty distinguishing a dignified advertisement from one that is undignified." This "I know it when I see it" approach has as many pitfalls in the area of regulation of attorney advertising as have been exposed in connection with other kinds of regulation.

## APPENDIX

## PROPOSED CHANGES TO DISCIPLINARY RULES UNDER CANON 2 UTAH STATE BAR CODE OF PROFESSIONAL RESPONSIBILITY

DR 2–101: Publicity and Advertising.

(A) * A lawyer may advertise services through public communications media such as a professional announcement, telephone directory, legal directory, newspaper or other periodical, radio or television. A lawyer shall not make any false, fraudulent or misleading statement about the lawyer or the lawyer's services to a client or prospective client. The foregoing shall be subject to the further provisions of this Rule 2–101 and the provisions of DR 2–102 through DR 2–105.

(B) A lawyer shall not use or participate in the use of any of the following forms of communication, by any medium of communication, for the purpose of advertising, publicizing, or promoting the services of the lawyer or of an affiliated lawyer:

(1) A statement which the lawyer knows or has reason to know

(a) contains a material misrepresentation of fact;

(b) omits to state any material fact necessary to make the statement, in the light of all circumstances, not misleading;

(c) is either intended or likely to create an unjustified expectation;

(d) is either intended or is likely to convey the impression that the lawyer is in a position to influence improperly any court, tribunal, or other public body or official;

(e) is either intended or is likely to be deceptive in any other respect concerning the lawyer or the services described;

(f) contains statistical or other assertions concerning the past or the predicted rate of success of the lawyer whose services are advertised or promoted;

* See opinion for changes to this section.

(g) contains a testimonial, endorsement, or other statement of opinion as to the quality of services of the lawyer or affiliated lawyer;

(h) makes any claim or self-laudatory statement concerning the absolute or relative quality of services of the lawyer or affiliated lawyer, which is either intended or likely to deceive or be misleading;

(i) contains material which seeks to attract clients by the use of garish or sensational format or language.

(2) A statement of fees for services which is intended or likely to be misleading.

(C) In addition to any other medium or form of communication which would be prohibited elsewhere in these Disciplinary Rules 2–101 through 2–105, either expressly or as applied, a lawyer, for the purpose of advertising, publicizing or promoting the services of the lawyer, shall not use or participate in the use of billboards, soundtrucks, flashing signs, flyers, circulars, promotional items such as matchbooks, telephone or address registry books, inscribed pencils or pens, and similar items. Permissible communications media are set forth in subparagraph (A) of this DR 2–101.

(D) A lawyer shall not compensate or give anything of value to a representative of the press, radio, television, or other communication medium in anticipation of or in return for professional publicity in a news item. A paid advertisement must be identified as such unless it is apparent from the context that it is a paid advertisement. If the paid advertisement is communicated to the public by use of electronic broadcast media, a recording of the actual transmission in the form in which the advertisement is to be broadcast shall be first approved by the lawyer(s) authorizing it and a recording thereof retained by the lawyer(s).

(E) In addition to the further provisions of this DR 2–101 and the provisions of DR 2–102 through DR 2–105, fee advertisements and other publication of information as to fees, shall be subject to the following:

(1) If a lawyer advertises a fee for a service, the lawyer must render that service for no more than the fee advertised.

(2) Unless otherwise specified in the advertisement if a lawyer publishes any fee information in a publication that is published more frequently than one time per month, the lawyer shall be bound by any representation made therein for a period of not less than 30 days after such publication. If a lawyer publishes any fee information in a publication that is published once a month or less frequently, he shall be bound by any representation made therein until the publication of the succeeding issue. If a lawyer publishes any fee information in a publication which has no fixed date for publication of a succeeding issue, the lawyer shall be bound by any representation made therein for a reasonable period of time after publication but in no event less than one year.

(3) Unless otherwise specified in the advertisement, if a lawyer broadcasts any fee information, the lawyer shall be bound by any representation made therein for a period of not less than 30 days after such broadcast.

(F) A copy or record of an advertisement in its entirety shall be kept for one year after its dissemination.

(G) Every advertisement for legal services shall identify the name of the lawyer or law firm whose services are advertised.

(H) ** Except as permitted under DR 2–103 and 2–104, in-person, direct mail, and similar direct forms of contact with a prospective client by a lawyer for the purpose of soliciting business, are prohibited.

(I) Any form of communication by a lawyer referred to in this DR 2–101, by any medium of communication, for the purpose of advertising, publicizing, or promoting the services of a lawyer or of an affiliated lawyer shall comply with the limitations contained in paragraphs DR 2–101(A) and (B), as well as, where applicable, the provisions contained in DR 2–102 through DR 2–105.

DR 2–102: Professional Notices, Letterheads, and Offices.

(A) A lawyer or law firm shall not use or participate in the use of professional cards, professional announcement cards, office signs, letterheads, firm name, or other professional designation, notice or device that violates the provisions of DR 2–101(A) and (B), the provisions of this Rule or DR 2–105.

(B) *** through (F) [unchanged]

DR 2–103: Recommendation of Professional Employment.

(A) [unchanged in substance]

(B) through (E) [unchanged]

DR 2–104: Suggestion of Need of Legal Services.

[unchanged]

DR 2–105: Limitation of Practice.

(A) A lawyer may communicate the fact that the lawyer will accept employment in specified areas of practice. A lawyer whose practice is limited to specified areas of practice may communicate that fact. A lawyer shall not hold himself out publicly as a specialist and shall not indicate any certification or designation as a specialist, except as follows:

(1) A lawyer admitted to practice before the United States Patent and Trademark Office may use the designation "Patent Attorney" or a substantially similar designation; and

(2) In accordance with any plan regulating lawyer specialization approved and promulgated by the Utah Supreme Court.

DR 2–106: Fees for Legal Services.

[unchanged]

---

** "Direct mail" deleted from this section. See opinion.

*** See opinion for comments on this section.