In re BARCLAY.

No. 5324.   Decided July 26, 1933.   (24 P. [2d] 302.)

*Lawrence J. Barclay,* of Salt Lake City, for appellant.

*E. A. Rogers* and *E. C. Jensen,* both of Salt Lake City, for respondent.

PER CURIAM.

In 1931 our State Legislature enacted a law creating the Utah State Bar (Laws of Utah 1931, c. 48, p. 165). Pursuant to that act, a complaint was filed with the bar commission charging that:

"L. J. Barclay, a member of the said Utah State Bar, has knowingly and willfully violated Subdivision 2 of Section 331 of Compiled Laws of Utah 1917, which reads as follows:

" '2. Willful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession and any violation of the oath taken by him or of his duties as such attorney and counsellor.'

"And that the said L. J. Barclay has committed acts involving moral turpitude which render him an unsafe and improper person to be entrusted with the powers of an attorney at law, as follows, to-wit:

"That the said L. J. Barclay willfully and knowingly at Salt Lake City, Utah, between the 19th day of November, 1929 and the 25th day of November, 1929, received from one C. G. Teerlink the sum of $453.00 lawful money of the United States of America, which said money was then and there the property of one J. A. Checketts and which the said L. J. Barclay then and there well knew was the property of said J. A. Checketts, and which said money was to be kept safely by the said L. J. Barclay and to be delivered to the said C. G. Teerlink upon demand; that thereafter, and to-wit, on or about the 30th day of April, 1930, the said C. G. Teerlink demanded from the said L. J. Barclay the redelivery of said sum of money, but the said L. J. Barclay has failed, neglected and refused to return said money to the said C. G. Teerlink and has appropriated the same unlawfully to his own use."

The board of commissioners referred the matter of the charge made against Mr. Barclay to a committee on discipline under the provisions of section 15 of the act above mentioned. Hereafter in this opinion we shall refer to Mr. Barclay as the accused. Upon being cited to appear and plead to the complaint, the accused de-

murred thereto.  The board of commissioners of the Utah State Bar appointed attorneys E. A. Rogers and E. C. Jensen to conduct the prosecution.  The demurrer filed by the accused was upon the grounds that the complaint failed to allege sufficient facts to state a cause of action and that subdivision 2 of section 331 had been repealed before the complaint was filed.  The demurrer was overruled.  Thereupon the accused answered.  The answer denied generally the allegations of the complaint, and alleged that the $453 was paid to him by Mr. Teerlink as and for attorney's fees. Upon the issues thus joined a hearing was had.  At the conclusion of the hearing, the committee found the issues against the accused, and recommended that he "be suspended from the practice of law in thhe State of Utah and that his license to practice law in the State of Utah be suspended for a period of six months, and until he makes restitution of the aforesaid sum of money, together with interest thereon, to the person entitled thereto, and pay the costs of these proceedings."  The transcript of the evidence and the proceedings had before the committee, together with its recommendations, were certified to the board of commissioners.  The board approved the findings made by the committee, and made the same recommendations that were made by the committee.  The accused has brought the matter to this court for review pursuant to provisions of section 18 of the act.

The demurrer to the complaint was properly overruled. It is true that section 331 was repealed by the act creating the Utah State Bar (Laws of Utah 1931, c. 48, § 23, p. 172). It is quite generally held that the power is inherent in the proper court to discipline, suspend, or disbar an attorney for misconduct, independent of any express provision of a statute conferring such authority.  6 C. J. 582.  Such is the doctrine announced by the court in *Re Evans & Rogers*, 22 Utah 366, 62 P. 913, 53 L. R. A. 952, 83 Am. St. Rep. 794; *In re Snow*, 27 Utah 265, 75 P. 741; *In re Evans*, 42 Utah 282, 130 P. 217; *In re Platz*, 42 Utah 439, 132 P. 390; *In re*

*Hilton,* 48 Utah 172, 158 P. 691, Ann. Cas. 1918A, 271; *In re Hanson,* 48 Utah 163, 158 P. 778; *In re Burton,* 67 Utah 118, 246 P. 188. It is also urged by the accused that he is not charged with any infraction of any announced rule of this court, and that therefore the complaint is fatally defective. There is no merit to that contention. The power of this court to discipline or strike from its roll of attorneys one who has been found guilty of improper conduct is not limited to cases where such attorney has been guilty of an infraction of its rules. Indepenednt of statutory law, and independent of rules of court, there has grown up in England and in this country a common-law code of ethics for the guidance of those who are granted permission to engage in the practice of law. An infraction of the rules of conduct established at common law may subject an attorney to suspension or disbarment without regard to whether such conduct is expressly condemned by a statute or by a rule of court. The cases heretofore cited from this jurisdiction in effect support such view. Nor is there any merit to the claim made by the accused that the Utah State Bar commission was without jurisdiction to hear the cause upon the stated ground that the Utah State Bar did not exist at the time of the alleged commission of the acts of misconduct. Prior to the enactment of the law creating the Utah State Bar, this court was vested with authority to mete out punishment to attorneys who were guilty of misconduct in the practice of their profession. That authority under the act remains in this court. Before the act became law, the manner of making an investigation into the alleged misconduct of an attorney was left to the discretion of this court. The procedure provided for in the act is calculated to aid in such investigation. All that the act did as affecting the question urged by the accused was to change or more accurately fix the procedure that should be followed in investigating the conduct of an attorney accused of wrongdoing in his professional capacity. It is elementary law that a newly created method of procedure may be employed in an inquiry into

acts of alleged misconduct which occurred prior to the creation of such new procedure.

Touching the merits of the charge made against the accused, the evidence without conflict establishes these facts: The accused is an attorney at law, admitted to practice before this and the other courts of Utah. At the time complained of, he resided at, and was engaged in the ■ practice of his profession at, Salt Lake City, Utah.

During the month of November, 1929, and for some time prior thereto, the accused was acting as attorney for one C. G. Teerlink. For his services the accused was paid a retainer. At first the retainer paid was merely nominal, but the amount was increased so that at the time complained of the amount of the retainer fee agreed upon was $50 per month. C. G. Teerlink was engaged in the management of two apartment houses, one known as the Seagull Apartment which was owned by him, subject, however, to a mortgage in favor of the National Security Corporation; the other apartment house was known as the Stewart-Andrea, which was owned by the National Security Corporation. As manager of the Stewart-Andrea Apartment, Mr. Teerlink collected the rents. From the rents so collected, he paid the running expenses such as coal used for heating and costs of general repairs. The remainder of the rent money was paid to J. A. Checketts, who was the general manager of the National Security Corporation. At the time Mr. Teerlink *was employed to manage the Stewart-Andrea Apartment, no* definite agreement was had as to his compensation. He was told that he would be paid either in cash or would be given credit on the mortgage which the National Security Corporation held on the Seagull Apartment. On various occasions Mr. Teerlink attempted to secure a definite agreement with and payment by the National Security Corporation of the amount that should be paid him for services as manager of the Stewart-Andrea Apartment. He was unable to secure a settlement. In November, 1929, he consulted the accused concerning the collection of the money which he claimed was

owing to him for his services as manager of the Stewart-Andrea Apartment. It was agreed between the accused and Mr. Teerlink that some of the money collected by Teerlink as rent from the Stewart-Andrea Apartment should be delivered to the accused as a means of forcing the National Security Corporation to make settlement with Mr. Teerlink for his services. Pursuant to that arrangement, Teerlink delivered $453 of the money which he had collected from the rents of the Stewart-Andrea Apartment to the accused. The accused knew that the $453 so delivered to him was money which Mr. Teerlink had collected as rent from the Stewart-Andrea Apartment. This controversy is concerning the money which was so delivered. In April of the following year, 1930, a demand was made upon the accused for the return of the $453. The accused refused to comply with the demand, whereupon J. A. Checketts brought an action in the city court of Salt Lake City for the money. The accused filed an answer to the action so brought. The trial resulted in a judgment being made and entered in favor of Checketts and against the accused. Some time after the judgment was entered, supplementary proceedings were had in the case whereby the accused was examined touching his property. At the hearing, the accused stated that he had spent the $453 which he received from Mr. Teerlink, and that he was without funds or property with which to pay the judgment.

There is a conflict in the evidence as to whether or not Teerlink was indebted, and, if so, the amount of his indebtedness at the time in question to the accused as and for attorney's fees. The accused testified that in May or June, 1929, he entered into an agreement with Teerlink whereby Teerlink was to pay an attorney's fee of $5,000 if he, the accused, should be successful in having a trust deed for the sum of $31,500 declared void; that the trust deed covered the Seagull Apartment and was in favor of the National Security Corporation; that Teerlink represented to the accused that, in addition to the trust deed, there was a mort-

gage in favor of the National Security Corporation in the sum of $18,000 on the Seagull Apartment; that Teerlink stated that the money represented as being owing under the trust deed had been partially paid off, and that the $18,000 mortgage represented the balance owing upon the obligation, but that the National Security Corporation had refused to release the trust deed; that no action had been commenced for the cancellation of the trust deed, but that the accused had checked over the records in the county recorder's office with respect to the same; that he had represented Teerlink in twelve actions, most of which were actions growing out of claims for the remodeling of the Seagull Apartment; that the monthly retainer fee paid by Teerlink did not pay for all of the legal services rendered by him. The accused further testified that he applied the $453 upon the attorney's fee which was owing him by Teerlink. In his testimony Teerlink denied that he entered into any such agreement as that testified to by the accused, and likewise denied that he had any discussion whatsoever with the accused respecting any trust deed on the Seagull Apartment. Teerlink further testified that the accused agreed to perform all of the legal services which were performed by him for the monthly retainer, and that the accused had been fully paid for his services. A number of receipts signed by the accused were offered in evidence showing various payments of retainer fees. Much of the evidence which is brought there for review relates to the question of whether or not Teerlink was indebted to the accused for legal services, and if so, the amount thereof. We deem it unnecessary in this proceeding to review in detail the testimony touching that question. Suffice it to say the testimony of the accused touching his claim that Teerlink was indebted to him in a large sum for legal services rendered is far from satisfactory. His answers to questions asked him concerning his claim that Teerlink owed him a substantial attorney's fee were in many cases indefinite and evasive, and in other cases in conflict with other parts of his testimony.

In this proceeding, however, it is somewhat beside the issue to determine whether Teerlink did or did not owe the accused an attorney's fee at the time he appropriated the money in question to his own use. The more important question to be determined is: Did the accused in good faith believe he was entitled to appropriate the $453 to his own use? The committee on discipline and the board of commissioners of the Utah State Bar evidently determined that question against the accused. Upon this record they could not well have reached any other or different conclusion. It is clear that the accused knew that the money in question did not belong to Teerlink except as he might be able to establish a claim to it for his services in managing the Stewart-Andrea Apartment. That the money was delivered to the accused to be held by him pending the outcome of the dispute between Teerlink and Checketts, manager of the National Security Corporation, is, in our opinion, established by a clear preponderance of the evidence.

It is urged by the accused in his brief that there is a material variance between the charge made against him and the proof, in that he is charged with the appropriation of money belonging to J. A. Checketts, and the proof shows that the money belonged to the National Security Corporation. There is a variance between the charge and proof as urged by the accused, but we do not regard the variance as fatal. This is not a criminal proceeding, and we are unable to see how the accused could have been prejudiced by the variance. Moreover, the judgment rendered in the city court of Salt Lake City against the accused for the money in question was in favor of J. A. Checketts. The complaint filed against the accused in this proceeding fully advised him of the money he was charged with having appropriated to his own use. The variance complained of cannot change the results in this proceeding, and hence is immaterial.

At the time of the oral argument, the accused urged that he was ready to pay the money in question to the person en-

titled thereto, but that he did not know who was entitled to the same. It was stated by the accused that, after the judgment was rendered against him in the city court action, a writ of granishment had been served upon him by a judgment creditor of J. A. Checketts. Since the oral argument as appears from the brief and from receipts filed in this cause, the accused has fully satisfied the judgment rendered against him in the city court. Full restitution having been made by the accused, we need not further consider that phase of the case.

The most difficult question presented for determination is the kind of judgment that should be rendered. If the accused was guilty of the crime of embezzlement by reason of appropriating the $453 to his own use, it would seem that nothing short of disbarment would serve to protect the public from his further participation in the administration of the law. It was so held *In re Platz,* supra. Evidently the committee on discipline who had the advantage of observing the demeanor of the witnesses who testified, and the board of commissioners who approved the finding made by the committee, were not satisfied that the accused was guilty of embezzlement. Had they been convinced that the accused was guilty of that crime, doubtless they would have so found. We are not prepared to say that the committee on discipline and the board of commissioners were in error in failing to find that the accused was guilty *of embezzlement. Upon this record it may be said that the* accused had at least a colorable claim to a part of the money in question. It clearly appears from the evidence that the accused had good reason to believe that the National Security Corporation owed Teerlink some money for the services rendered in the management of the Stewart-Andrea Apartment. Had the accused been successful in establishing the right of his client Teerlink to the money in question, the claim of the accused to such money, or a part thereof, would be more consonant with good faith on his part. That Teerlink had a right to adjust, without suit, his difference with

the National Security Corporation, as was done, must have occurred to the accused. Whatever may have been the merits of the claim of Teerlink to the money in question, the accused was not, under the facts disclosed by this record, justified in appropriating such money or any part thereof to his own use until at least the claim of Teerlink was established. In light of the fact that the accused is an attorney of several years' experience in the practice of his profession, the conclusion is inevitable that he knew he had no such right. The recommendation that the accused be suspended from the practice of law for a period of six months finds ample support in the record before us, but the fact that the accused has heretofore made full restitution should, as we think, entitle him to some mitigation of the punishment recommended.

The able and conscientious manner in which the committee on discipline, the board of commissioners, and the attorneys who were appointed to prosecute this cause have conducted this, the first proceeding brought to our attention for the discipline of an attorney under the act creating the Utah State Bar, bespeaks much for the success of that organization. We heartily commend those who participated in conducting this proceeding for the services so well rendered in an effort to raise the standard of the legal profession in this state.

The judgment is that Lawrence J. Barclay be suspended from the practice of law in all the courts of this state from the 1st day of August, 1933, to and including the 31st day of October, 1933, and until he pays to the clerk of this court for the use and benefit of the Utah State Bar such costs as it has expended in this proceeding. It is further ordered that, within thirty days after the filing of this opinion, the Utah State Bar serve upon the accused and file with the clerk of this court a memorandum of the costs claimed by it in connection with this proceeding. If the accused is dissatisfied with the memorandum of costs so filed, then he may file objections thereto within five days

after he is served with the cost bill. This court retains jurisdiction of the cause to determine the amount of costs to be paid by the accused, and retains further jurisdiction for and during the period of the suspension.