**In re DISCIPLINARY ACTION OF George McCUNE.**

No. 20140.

Supreme Court of Utah.

March 31, 1986.

George McCune, Salt Lake City, pro se.

Jeffry Paoletti, Utah State Bar, Salt Lake City, for respondent.

STEWART, Justice:

David Smith, general manager of Capitol Reporters, a firm of certified court reporters, and Thomas McElmeel, an out-of-state attorney, filed separate complaints against attorney George M. McCune with the Utah State Bar. The complaints alleged that McCune, a Utah attorney, had not paid over money to the complainants which he had received for that purpose. The Board of Commissioners of the Utah State Bar found that McCune had violated Rule II section 3 of the Revised Rules of Conduct of the Utah State Bar and recommended to this Court that he be suspended from practice for 30 days and that he be required to pay Capitol Reporters and McElmeel the money he owed them as a condition to his reinstatement.[1] McCune appeals those

---

**1.** In the McElmeel case, the Board also found a violation of Canon 1, DR 1–102(A)(4) of the Revised Rules of Professional Conduct of the Utah State Bar. In the Capitol Reporters case, the Board also found violations of Canon 1, DR 1–102(A)(6) and Canon 9, DR 9–101 of the Rules of Conduct. Because these rules apply only peripherally, if at all, to these facts, we restrict our consideration to Rule II section 3.

findings and recommendations. We affirm.

In September, 1981, McCune wrote to the Washington law firm of McElmeel, Schultz and Doyle (McElmeel), inquiring whether the firm would act as local counsel in representing McCune's client, Klemp Corporation, in an action brought in the state of Washington, and if so, what the fee arrangement would be. McElmeel and McCune agreed on the terms of the representation, and McElmeel successfully represented Klemp in the litigation. The McElmeel law firm sent billing statements to McCune for services rendered to Klemp. McCune incorporated the law firm's bill into his own and sent his bill to Klemp. Klemp paid McCune $2,770.60, the entire amount the McElmeel firm had billed McCune. McCune, however, forwarded only $1,178.12 to the firm and retained the remaining $1,592.48 for his own use.

In June, 1981, McCune hired Capitol Reporters to transcribe depositions in one of his cases. Capitol Reporters billed McCune $1,962.35 for the services of the two reporters who worked on the deposition. McCune billed his client for the services of the reporters and was paid the entire amount. McCune, however, paid only $950.00 to Capitol Reporters and retained the $1,012.35 balance for his own use.

McElmeel and Capitol Reporters filed complaints against McCune through the office of Bar Counsel. In the Capitol Reporters case, McCune was informed by the Ethics and Discipline Committee panel which investigated the complaint that if he paid the money owed within sixty days, he would receive only a private reprimand. He did not pay the money, and a formal complaint was issued. A formal complaint was also issued in the McElmeel case.

■ Although McCune filed numerous motions in both cases, all of which were disposed of, he refused to answer the complaints. He also failed to appear before the hearing committee panel. The panel forwarded its findings and recommendations to the Board of Bar Commissioners, which adopted them. McCune then filed a Petition to Amend. A hearing was set before a subcommittee of three commissioners. McCune again failed to attend. The Board recommended that McCune be suspended for thirty days, and that he be required to pay Capitol Reporters and McElmeel the amounts he held for them as a condition of reinstatement. McCune contests these recommendations before this Court. At no time during the proceedings below or before this Court has McCune denied that he owes McElmeel and Capitol Reporters the amounts the Bar Commission found were due them. Further, his failure to answer the formal complaints constitutes an admission of the charges contained in the complaints pursuant to Rule XI(d) of the Rules of Discipline of the Utah State Bar.

On appeal, McCune raises numerous questions pertaining to the governance of the Bar of this state. However, since a number of the questions have nothing to do with the issues raised by this case, and because the questions are so poorly and unprofessionally briefed, we consider only two of them at any length.

■ Whether the Bar can use its disciplinary power to require an attorney to pay money owed to a nonclient is one issue that fairly arises from the facts. Prior to July 1, 1985, the power to regulate the practice of law was inherent in the judicial power conferred on this Court by Article VIII section 1 of the Utah Constitution.[2] The

2. *E.g., In re Utah State Bar Petition,* Utah, 647 P.2d 991 (1982); *Ruckenbrod v. Mullins,* 102 Utah 548, 559–60, 133 P.2d 325, 330 (1943). *In re Integration and Governance of the Utah State Bar,* Utah, 632 P.2d 845, 846–48 (1981) (Maughan, J., concurring and dissenting). Article VIII of the Utah Constitution was repealed and a new judicial article was adopted by the people effective July 1, 1985. The new version now

expressly provides that this Court shall govern the practice of law including the conduct and discipline of members of the Bar. Article VIII section 4. However, because repeal and reenactment did not occur until 1985, some four years after the events of this case, we consider McCune's claims in light of the law in effect at the time of those events.

amended version of Article VIII, which became effective July 1, 1985, expressly confers this power. The power to regulate necessarily includes the power to discipline. *Ruckenbrod v. Mullins*, 102 Utah 548, 559–60, 133 P.2d 325, 330 (1943). *In re Barclay*, 82 Utah 288, 291, 24 P.2d 302, 303 (1933); *In re Platz*, 42 Utah 2d 439, 443–44, 132 P. 390, 392 (1913). Although the legislature has some power to regulate and control attorneys, at least in certain respects, that power is subject to this Court's inherent power to discipline its officers. *Ruckenbrod, supra*, 102 Utah at 559–60, 133 P.2d at 330. The Legislature, exercising its pre-1985 authority, enacted statutes governing the conduct of attorneys, which were codified in Title 78, chapter 51. In 1981, this court exercised its then inherent authority and integrated the Utah State Bar. *In re Integration and Governance of the Utah State Bar*, Utah, 632 P.2d 845 (1981). At the same time, this Court adopted the Rules of Organization and Management of the Utah State Bar which included much of the text of Title 78, chapter 51. *Id.* at 846. Therefore, pursuant to this Court's authority to discipline, at the time of the events at issue herein, McCune's behavior was subject to the strictures of the Rules of Organization and Management of the Utah State Bar. Those rules empower the Board of Bar Commissioners to establish rules governing the conduct of members of the Bar. *See* Rule 12, Rules of Organization and Management of the Utah State Bar, previously codified as § 78–51–12. The Board has power to recommend to this Court a reprimand, suspension or disbarment for breach of its Rules of Conduct. *See* Rule 18, Rules of Organization and Management of the Utah State Bar, previously codified as § 78–51–18. That recommendation may be reviewed by this Court which may then "take any action agreeable to its judgment." [3]

*See* Rule 19, Rules of Organization and Management of the Utah State Bar, previously codified as § 78–51–19. It should be noted, however, that the statutory enactments concerning attorney discipline did not prior to July 1, 1985, and do not now in any way limit or alter the power of the courts to discipline or disbar members of the Bar. *Id.*

■ Pursuant to Rule 12 of the Rules of Organization and Management, Rule II section 3 of the Rules of Professional Conduct of the Utah State Bar was passed. It states:

> An attorney receiving money or property of his client in the course of his professional business, shall pay or deliver the same to the person entitled thereto within a reasonable time, unless he has just cause for retaining it.

Rule VII of the Rules of Discipline of the Utah State Bar sets forth a number of possible disciplinary measures available to the Board. Rule VII(g) provides for restitution to "persons financially injured" by an attorney's unprofessional conduct:

> *Restitution.* A disciplined lawyer may be required to make restitution to persons financially injured by his unprofessional misconduct and also, to reimburse the client's security fund of the Bar for any expenditure it has made. The Court has exclusive power to require restitution.

As required by Rule 14 of the Rules of Organization and Management, previously codified as § 78–51–14, both of the above disciplinary rules have been approved by this Court.

The disciplinary procedures of the Court and Bar are not intended to serve as an alternative means of dispute resolution for third persons who have monetary disputes with attorneys. The practice of law not

---

**3.** A number of courts, including this one, have ordered payment of restitution to a client as a condition to reinstatement in the Bar. *E.g., In re Larsen*, 11 Utah 2d 325, 358 P.2d 908 (1961); *In re Cornelius*, Alaska, 521 P.2d 497 (1974); *The Florida Bar v. Moriber*, Fla., 314 So.2d 145 (1975); *In re Francess*, 39 App.Div.2d 199, 333 N.Y.S.2d 294 (1972). For cases holding to the contrary, *see e.g., In re Ackerman*, 263 Ind. 309, 330 N.E.2d 322 (1975), *overruling In re Case*, 262 Ind. 118, 311 N.E.2d 797 (1974); *State ex rel. Foot v. Hughes*, 92 Mont. 53, 10 P.2d 584 (1932).

infrequently leads to commercial disputes that can and should be resolved in the civil courts. The disciplinary rules of the Bar are designed to assure that lawyers handle their professional affairs with great integrity and competence. Those rules are not designed to allow those who have nonprofessional disputes to invoke the spectre of a disciplinary action simply as added leverage in trying to settle a business dispute with an attorney.

The instant case, however, is more than a business dispute. George McCune received monies from his clients to pay debts incurred in handling their legal affairs. He held the money in a fiduciary capacity with the understanding that it was for a specific purpose. He then failed to pay it to those to whom it rightfully belonged. All this was done in his professional capacity and in violation of the Rules of Professional Conduct and of fundamental standards of honesty. McCune's behavior was clearly of the type intended to be proscribed by Rule II section 3. Imposing discipline in this case appropriately serves to maintain the integrity and professionalism of the Bar.

McCune also claims that his due process rights under Article I section 7 of the Utah Constitution were violated because Bar Counsel was involved in both the prosecutorial and the adjudicative phases of this proceeding.

■■■ It is not unconstitutional per se for a single administrative agency to perform both investigative and adjudicative functions. *Withrow v. Larkin*, 421 U.S. 35, 58, 95 S.Ct. 1456, 1470, 43 L.Ed.2d 712 (1975) (an injunction issued against continuation of proceeding by an examining board of physicians after the board had investigated charges against physicians was improper). *See also DeGroot v. Arizona Racing Commission*, 141 Ariz. 331, 686 P.2d 1301 (1984); *Pork Motel Corp. v. Kansas Department of Health and Environment*, 234 Kan. 374, 673 P.2d 1126 (1983); *Tweedy v. Oklahoma Bar Association*, Okla., 624 P.2d 1049 (1981). How-

ever, it has also been stated that meshing of the two functions in a particular case could make the risk of unfairness so high that to permit one agency to perform both functions would violate due process. *Withrow, supra,* 421 U.S. at 58, 95 S.Ct. at 1470.

Federal case law is not controlling in this case since McCune claims a violation of state, rather than federal constitutional rights. However, we have been presented with no basis for distinguishing a state standard from the federal standard. We therefore apply the *Withrow* standards, which we find persuasive.

It would have been a clear violation of state due process had bar counsel investigated, prosecuted and then participated as a judge in the adjudication of this case. However, that is not what occurs in Utah State Bar disciplinary proceedings generally, nor was it the case here. The Rules of Discipline of the Utah State Bar adequately divide the investigative and adjudicative functions so that the integrity of the process is protected. Bar counsel initially reviews all complaints. He or she then refers those complaints which cannot be disposed of informally to a panel of the State Bar Ethics and Discipline Committee. This panel investigates fully and determines whether a formal complaint should issue. If a formal complaint issues, the matter is shifted to a hearing committee panel, an entirely different group, for adjudication. Although bar counsel is present during that hearing, he or she is present as a prosecutor, not as an adjudicator. That process was followed in this case. The record reveals no evidence that bar counsel participated in adjudicating this case. Bar counsel's preparation of findings, conclusions and recommendations in this case was no different than the preparation of similar documents by counsel for the prevailing party in district court proceedings.

■■■ McCune's other claims are equally without merit, as set forth below. McCune

claims that Rule VIII(c) [4] of the Rules of Discipline of the Utah State Bar which grants immunity to complainants is unconstitutional because the inherent power of the court to regulate the Bar is not broad enough to include granting immunity. In this case, however, immunity is simply not an issue. McCune has not attempted to sue either of the complainants and therefore has no standing to raise the issue. *See Kennecott Copper Corp. v. Salt Lake County,* Utah, 702 P.2d 451, 454 (1985); *Jenkins v. Swan,* Utah, 675 P.2d 1145, 1149 (1983).

■ McCune also claims that the Ethics and Discipline Committee panel acted outside its grant of authority by initially informing him that if he paid Capitol Reporters within 60 days he would receive only a private reprimand. He claims that this action is not one of the five alternatives available to the Ethics and Discipline Committee panel under Rule IX(d).[5] He further alleges a double jeopardy violation, claiming that jeopardy attached when, after he did not pay the Capitol Reporter's bill within 60 days, the Ethics and Discipline Committee panel issued a Formal Complaint. In the first place, this claim is groundless because double jeopardy principles apply only in criminal cases. Bar disciplinary proceedings are civil in nature. Their aim is to maintain the honesty, integrity and professionalism of the Bar. Furthermore, the Rules confer on the Panel the express authority to issue a formal complaint, a step it had warned McCune it would take if he did not pay Capitol Reporters the amount owed. Because McCune has never paid Capitol Reporters the money he owes, his objection to the panel's earlier conditional offer is patently groundless.

■ McCune's next claim is that the pleadings in these cases were not clear and concise enough to comply with the requirements of Rule 8 of the Utah Rules of Civil Procedure and Rule XI of the Rules of Discipline. Specifically, he claims that the pleadings are overbroad in the manner in which they alleged which disciplinary rules were violated. The pleadings in this case, however, were sufficiently concise and clear. Although some of the disciplinary rules charged did not apply to his behavior, the complaint did allege rule violations

---

4. Rule VIII(c) states:

    The complainant shall be absolutely immune from civil liability for any complaint filed with the Bar, but the disclosure of such information by the complainant to other persons or interests shall not be within the immunity of this Rule.

5. Rule IX(d) states:

    Upon a review of all the facts developed by the complaint, answer, investigation, and hearing, the Panel, in behalf of the committee shall make one of the following determinations:

    (1) That the complaint does not raise facts in which there is reasonable cause to believe that the lawyer was engaged in unprofessional or unethical misconduct; in which case, the complaint shall be dismissed. Bar Counsel shall promptly give notice of such dismissal by regular mail to the complainant and the lawyer.

    (2) That a letter of admonition be issued by the Committee to the lawyer advising of Committee concern as to a minor infraction or misconduct. Said letter shall be signed by the Committee Chairman and shall serve as guide for the future conduct of the lawyer. There-

    upon, the complaint shall be dismissed with the complainant and the accused lawyer being notified of the dismissal. The complainant may also be confidentially notified of the admonition at the discretion of the Committee.

    (3) That a dismissal may be conditioned upon the performance by the accused lawyer of specified conduct which the Committee determines to be warranted by the facts and the Code of Professional Responsibility.

    (4) That the complaint be referred to the Commission with accompanying Committee recommendation that the accused lawyer be privately reprimanded. Such Committee recommendation shall be in writing, shall state the substance and nature of the complaint and defenses and the basis upon which the Committee has concluded that the lawyer be reprimanded. A copy of such Committee recommendation shall be served upon the accused lawyer prior to its delivery to the Commission.

    (5) That a Formal Committee Complaint will be prepared and filed with the Commission, signed by the Chairman, against the accused lawyer. Said Complaint, at the discretion of the Committee, may recommend specific disciplinary actions.

which included and proscribed McCune's behavior.[6]

▇ Another of McCune's claims is that his behavior in the Capitol Reporters matter was not proscribed by Rule II, section 3. He claims the rule was meant to apply only when a lawyer serves as a conduit from the client to a third party entitled to the funds. He asserts the rule does not apply to situations where the lawyer is primarily responsible for the money owed, although in common practice the lawyer would charge that amount back to the client.

He further asserts that since the findings in the Capitol Reporters case do not state expressly that McCune retained money which came from a client and which was to be paid to someone entitled thereto, the findings do not expressly set forth the violation of every element of the offense. This claim is patently frivolous. First, it is obvious from the findings that McCune represented one of the parties in the lawsuit for which Capitol Reporters had rendered services. Second, the findings expressly state that McCune billed his client for the services of the reporters and was paid the amount billed by the client. McCune makes no contention that Capitol Reporters was not entitled to the money paid by the client. Although McCune may have been primarily liable for the Capitol Reporters bill, in actuality his client paid him the funds with which he was to pay Capitol Reporters. McCune has no reasonable basis for claiming either that the findings in the Capitol Reporter case were inadequate, or that Rule II section 3 was not meant to proscribe his particular conduct.

▇ McCune also claims that he did not receive adequate notice of two of the hearings held because notice of those hearings was mailed to him five days before the date of each hearing. Rule 6(e) of the Utah Rules of Civil Procedure provides that where notices of hearings are mailed, three additional days must be added to the five-day notice period. However, McCune did not object at the time of either hearing to the notice he received. He thereby waived his right to object, especially since he has shown no prejudice resulting from the shortened time period.

▇ McCune further alleges that his motions to amend or modify the Commission's findings should have been heard in a trial de novo by the entire Board, and that the Board did not have authority to delegate the hearing of those motions to a subcommittee.[7] A petitioner is not entitled to appear before the Board at hearings on motions to amend or modify. McCune, however, was provided the opportunity to appear, at least before the subcommittee, although he did not. After the subcommittee hearing, the full Commission reviewed all the materials submitted before voting to deny McCune's motion to amend or modify. Although it may not have been proper for the Board to refer the motion to a subcommittee in the first instance, McCune was nevertheless afforded the full review provided by the rule.

▇ In addition, McCune contends that Rule II section 3 of the Rules of Professional Conduct conflicts with U.C.A., 1953, § 78–51–42.[8] He claims that where a rule

6. See footnote 1, *supra.*

7. Rule XII(d)(1) states:
   A copy of the Findings, Conclusions, and Recommendation shall be served upon Bar Counsel and the accused lawyer or his counsel. Bar Counsel or the accused lawyer shall have 10 days from the date of receipt of the Findings, Conclusions and Recommendation to petition the Commission for amendment or modification thereof, in substance or in form. Said petition shall be filed with the Executive Director of the Bar, which succinctly specifies any proposed amendments, additions, or dele-

tions and shall set forth the basis therefore including any citation of authorities. The Commission shall consider any such petition and may amend its Findings, Conclusions, or Recommendation or make additional Findings, Conclusions and Recommendation accordingly.

8. Section 78–51–42 was not enacted as part of the Rules of Organization and Management. It states:
   An attorney and counselor who receives money or property of his client in the course of his professional business and who refuses

709

and a statute conflict, the statute has precedence, and therefore, before a violation of Rule II section 3 can be found there must be a refusal of the attorney to pay the amounts due. McCune misses two important points. First, he has refused to pay the amounts admittedly due Capitol Reporters and McElmeel. Second, § 78-51-42 is a criminal statute, while Rule II section 3 is an ethical rule. The focus and purpose of the rule and the statute are different. They operate in separate spheres. There is, therefore, no conflict between them.

McCune claims that Rule 12 of the Rules of Organization and Management of the Utah State Bar, previously codified as § 78-51-12 is unconstitutional because it grants the Bar Commission power to discipline, and that power is reserved for the Supreme Court.[9] He claims that giving the Bar power to discipline is a violation of the separation of powers principles which underlie our government organization. Since its inception this Court has had inherent power to regulate the practice of law. Delegation to the Bar of the power to investigate and make recommendation for discipline is well within this Court's inherent powers. Only discipline which does not affect a lawyer's continued ability to practice is delegated to the Bar Commission. Suspension or disbarment can be authorized only by the Supreme Court.

Affirmed.

HALL, C.J., and DURHAM, J., concur.

to pay or deliver the same to the person entitled thereto within a reasonable time after demand is guilty of a misdemeanor.

9. McCune bases the argument in his brief on citations to § 78-51-12. However, that section was adopted by this Court as Rule 12 prior to the initiation of proceedings against McCune. Rule 12 states:

The Board shall establish rules governing the conduct of all persons admitted to practice, and shall investigate and consider and pass upon all unethical, questionable or improper conduct of any person admitted to the practice of the law, including members of the Bar holding judicial office. The Board shall also establish rules governing procedure in cases involving alleged misconduct of members of the Utah State Bar, including those holding judicial office, and may create committees for the purpose of investigating complaints and charges, which committees may be empowered to administer discipline, including the recommendation of suspension or disbarment from the practice of law, in the same manner as the Board itself, but no recommendation for the suspension or disbarment of a member shall be final until approved by the Board. The Board or any such committee may designate any officer, authorized by law to take depositions, to take testimony under oath in any such investigations.

---

HOWE, Justice (concurring):

I concur, except that I believe the suspension should be for six months instead of thirty days.

ZIMMERMAN, J., concurs with the concurring opinion of HOWE, J.