Brian M. BARNARD, Plaintiff, Appellee, and Cross–Appellant,

v.

UTAH STATE BAR and Stephen Hutchinson, Defendants, Appellants, and Cross–Appellees.

No. 880201.

Supreme Court of Utah.

Jan. 9, 1991.

Rehearing Denied March 20, 1991.

Brian M. Barnard, C. Dane Nolan, Salt Lake City, for plaintiff-appellee, and cross-appellant.

Carman E. Kipp, Robert H. Rees, Richard D. Burbidge, Stephen B. Mitchell, Salt Lake City, for defendants, appellants, and cross-appellees.

STEWART, Justice:

The Utah State Bar and its executive director appeal a summary judgment directing them to disclose to Brian M. Barnard, a member of the Bar, salary and benefit information with respect to Bar employees. Barnard cross-appeals the denial of exemplary damages and attorney fees.

By a letter dated November 6, 1987, to Stephen F. Hutchinson, who was then executive director of the Utah State Bar, Brian M. Barnard requested information concerning the wages, salaries, and benefits the Bar paid to its employees. Hutchinson responded by providing Barnard with the salary ranges for different categories of Bar employees and a description of the fringe benefits of the Bar staff. Barnard was not satisfied with that information and he wrote another letter to Hutchinson requesting more specific salary and benefit information concerning the key employees of the Bar. Hutchinson responded with a refusal to disclose further salary and benefit information.

Barnard then filed this suit against the Bar and Hutchinson for a decree directing the Bar to supply him with detailed salary and benefit information for all Bar employ-

ees. Barnard asserted that the Bar is a state agency and is required to disclose this information under the Archives and Records Services and Information Practices Act, Utah Code Ann. §§ 63–2–59 to –89 (1989) ("Records Act"), and the Public and Private Writings Act, Utah Code Ann. §§ 78–26–1 to –8 (1987) ("Writings Act"). He also sought exemplary damages and attorney fees. On Barnard's motion for summary judgment, the trial court ruled that the Bar had to disclose the salary and benefit information, but denied his request for exemplary damages and attorney fees. The judgment has been stayed pending appeal.

The Bar and Hutchinson appeal the summary judgment and present two issues: (1) whether the Bar is a state agency and is therefore required to disclose the salary and benefit information of its employees under the Records Act and the Writings Act; and (2) if the Bar is a state agency, whether the Records Act and the Writings Act can constitutionally be applied to the Bar. Barnard contends on a cross-appeal that the trial court erred in denying his claim for exemplary damages and attorney fees.

At the outset, we make clear precisely what issue is before the Court. The issue is whether the Utah State Bar is a "state agency" within the scope of the meaning of that term as used in the Records Act and the Writings Act. We do not decide whether the Utah State Bar is a state agency for any other purpose, such as the federal Civil Rights Act, 42 U.S.C. § 1983 (1981), nor do we decide whether the plaintiff would be entitled to the information if he had invoked some other legal theory. Nor do we decide whether Barnard might have successfully petitioned this Court for the promulgation of a rule, pursuant to our rule-making authority, to require the Bar to disclose such information. On this appeal, therefore, we review only the narrow question of whether the Records Act and the Writings Act apply to the Utah State Bar Association.

The Writings Act provides for public access to public records and writings. It provides a right to inspect and copy any public writing of the state, unless a statute provides otherwise. Utah Code Ann. § 78–26–2 (1987). That Act does not, however, define the term "public writings." In prior cases, we have used the definition of "public records" in the Records Act to define the term "public writing" in the Writings Act.[1] *KUTV, Inc. v. Utah State Bd. of Educ.*, 689 P.2d 1357, 1360 (Utah 1984); *Redding v. Brady*, 606 P.2d 1193, 1195 (Utah 1980). The term "public records" is defined by Utah Code Ann. § 63–2–61(1) (1989) in the Records Act as

> all books, papers, letters, documents, maps, plans, photographs, sound recordings, management information systems, or other documentary materials, regardless of physical form or characteristics, made or received, and retained by *any state public office* under state law *or in connection with the transaction of public business by the public offices, agencies, and institutions of the state* and its counties, municipalities, and other political subdivisions.

(Emphasis added.) Under this provision, disclosure is required of documentary materials made or returned under state law or "in connection with the transaction of public business." The Records Act defines "public offices" as "the offices ... of any court, department, division, board, commission, bureau, council, authority, institution, or other agency of the state or any of its political subdivisions." Utah Code Ann. § 63–2–61(3) (1989). The Records Act defines "state agency" as a "department, division, board, bureau, commission, council, institution, authority, or other unit, however designated, of the state." Utah Code Ann. § 63–2–61(2) (1989).

The Bar argues that it is neither a "public office" nor "a state agency," but rather a private organization which performs certain public service functions and is regulated and supervised by the Supreme Court.

---

1. The Bar concedes that if it is considered a state agency as defined by the Records Act, then the Writings Act on its face also applies to the Bar.

Before 1931, the Bar existed as a private organization of attorneys, and the Legislature provided for the admission to practice and the discipline and disbarment of attorneys in Utah. *See* Compiled Laws of Utah §§ 3100–3124 (1888); Compiled Laws of Utah §§ 317, 318, 331 (1917). The Legislature also granted authority to the Supreme Court of Utah to establish rules for the admission to practice and the discipline and disbarment of attorneys. *See* Compiled Laws of Utah §§ 319, 331 (1917). Before 1931, Bar membership was voluntary and admission and discipline were regulated directly by the Legislature and the courts, not by the Bar.

■ In 1931, the Legislature gave official recognition to the Utah State Bar. *See* 1931 Utah Laws ch. 48. The 1931 Act required every person practicing law in the State to pay a license fee to be placed in a fund for use by the Utah State Bar. *Id.* at § 12. Every person admitted to practice law had to be a member of the Utah State Bar. *Id.* at § 4. The Bar was given power to recommend the admission of applicants and the discipline of lawyers to the Supreme Court for binding action. *Id.* at § 10. The act provided that the rules and regulations of the Bar had to be approved by this Court to become final. *Id.* at § 16.

Notwithstanding the 1931 Act and subsequent amendments, this Court regulated the practice of law through its inherent judicial power, in addition to the statutory authority conferred on it, until 1985. *See In re McCune,* 717 P.2d 701, 704 (Utah 1986); *In re Utah State Bar Petition,* 647 P.2d 991, 992 (Utah 1982); *Ruckenbrod v. Mullins,* 102 Utah 548, 559–60, 133 P.2d 325, 330 (1943). *See also Washington State Bar Ass'n v. Graham,* 86 Wash.2d 624, 548 P.2d 310 (1976). Although the Legislature asserted some authority with respect to the practice of law prior to the 1931 Act, the authority of this Court to regulate the admission and discipline of attorneys existed as an inherent power of the judiciary from the beginning. *See In re McCune,* 717 P.2d at 704–05. The Legislature formally recognized and codified part of this Court's inherent judicial power

by expressly providing in the 1931 Act that nothing in that act limited or altered "the powers of the courts to disbar or discipline members of the bar." Rev.Stat. of Utah § 6–0–18 (1933); Utah Code Ann. § 6–0–18 (1943); Utah Code Ann. § 78–51–19 (1987).

In 1981, the Court adopted rules for integration of the Bar under the Court's own independent, inherent power derived from the historic and fundamental relationship between attorneys at law and the courts and the doctrine of separation of powers. *See In re Integration and Governance of the Utah State Bar,* 632 P.2d 845 (1981); *See also In re McCune,* 717 P.2d at 705. At that time, the Court adopted the Rules of Organization and Management of the Utah State Bar, which incorporated much of the text of Title 78, chapter 51, the statutes governing the Bar. *See In re McCune,* 717 P.2d at 705. The present Rules for Integration and Management of the Utah State Bar state that the Supreme Court of Utah, "acting with the powers vested in it by the Constitution of this State and its inherent power over members of the legal profession as officers of the Court ... does hereby perpetuate, create and continue under the direction and control of this Court an organization known as the Utah State Bar." Rules for Integration and Management of the Utah State Bar, Rule (A)1. The Rules for Integration and Management also provide, inter alia, "All persons now or hereafter licensed in this State to engage in the practice of law shall be members of the Utah State Bar...." *Id.*

Following the Bar's integration, Article VIII of the Utah Constitution was amended, effective July 1, 1985. *See In re McCune,* 717 P.2d at 704–05. The amended version of Article VIII expanded the power of the Court and made explicit its power to regulate the "practice of law." Article VIII, § 4 states, "The supreme court by rule shall govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law."

In light of this general background, we now address the question of whether the

Records Act and the Writings Act apply to the Bar. That question is, in the first instance, solely a question of statutory construction. The issue, in terms of the statutory language, is whether the Bar is a "public office" or "state agency" within the meaning of those terms in § 63–2–61(1) as defined by § 63–2–61(2), (3). Although the statutory definitions of those terms are broad, they do not include the Bar. The Bar is not a court; nor is it an "institution, authority or other agent ... of the State." § 63–2–61(2), (3).

■ In reaching this conclusion, we look to the nature, purpose, and functions of the Bar. We note at the outset that the mere fact that an organization is created or officially recognized by statute does not make it a state agency. *See Utah Technology Fin. Corp. v. Wilkinson,* 723 P.2d 406, 414–15 (Utah 1986). Thus, the history of the Bar and its initial legislative authority do not require the conclusion that the Bar is a "public office" or "state agency."

The Bar is an organization that is *sui generis. See Washington State Bar Ass'n v. Graham,* 86 Wash.2d 624, 632, 548 P.2d 310, 315 (1976). It does not exist to "participate in the general government of the State, but to provide specialized professional advice to those with the ultimate responsibility of governing the legal profession." *Keller v. State Bar of Cal.,* 495 U.S. ——, ——, 110 S.Ct. 2228, 2235, 110 L.Ed.2d 1, 13 (1990). In addition, the Bar exists to promote the administration of justice in a variety of ways and to enhance professional competence through the dissemination of knowledge of legal principles. It also provides a number of services to the public and to practicing lawyers.

The Utah State Bar is similar to the California State Bar, which is also an integrated Bar. *Keller,* 495 U.S. at ——, 110 S.Ct. at 2234–35, 110 L.Ed.2d at 12–13, held the California Bar to be a nongovernmental organization. Chief Justice Rehnquist, writing for the Court, described that Bar as follows:

> The State Bar of California is a good deal different from most other entities that would be regarded in common parlance as "governmental agencies." Its principal funding comes not from appropriations made to it by the legislature, but from dues levied on its members by the Board of Governors. Only lawyers admitted to practice in the State of California are members of the State Bar, and all 122,000 lawyers admitted to practice in the State must be members. Respondent undoubtedly performs important and valuable services for the State by way of governance of the profession, but those services are essentially advisory in nature. The State Bar does not admit anyone to the practice of law, it does not finally disbar or suspend anyone, nor does it ultimately establish ethical codes of conduct. All of those functions are reserved by California law to the State Supreme Court.

495 U.S. at ——, 110 S.Ct. at 2234–35, 110 L.Ed.2d at 12 (citations omitted).

■ The same is true of the Utah State Bar. The Utah State Bar assists this Court in two regulatory functions. Under supervision of this Court, the Bar administers qualifying examinations and investigates the moral fitness of applicants to practice law. The Bar also recommends proposed disciplinary actions to the Court for those whom the Bar has preliminarily found to have violated the Code of Professional Conduct. The Bar has no final decision-making authority in these matters and acts only by recommending to the Court appropriate action in all cases involving admissions and public discipline. The Court delegates those responsibilities to the Bar, which has no power to order disbarment, suspension, public reprimand, or restitution on its own authority. *See* Procedures of Discipline of the Utah State Bar, Rule VII. Likewise, the Bar has the authority to "recommend and certify to the Supreme Court for admission to the Bar ... persons ... who possess the necessary qualifications...." Rules Governing Admission to the Bar, Rule 2–1. The Supreme Court, however, approves the rules and standards governing admission to the Bar. The Bar's participation in these regulatory functions is as a private organization which aids this Court

by rendering advisory services. Neither the performance of these functions nor this Court's approval of the budget transforms the Bar into a "public agency."[2]

In addition, the Utah State Bar Association has a number of attributes of nongovernmental organizations. It is a private organization. It has the capacity to sue and be sued. It owns real property in its own name, and the State has no interest therein.[3] *See* Rules for Integration and Management of the Utah State Bar, Rule (A)1. The Bar pays taxes on its real and personal property. Although it is subject to the supervision of the Utah Supreme Court, it is in large part self-governed by Bar commissioners who are elected by Bar members. Employees are not paid by the state and are not entitled to any benefits given state employees. The Bar is funded completely by the dues and fees paid by its members and Bar applicants; it receives no public funds or tax revenues. It exists independently of the legislative and executive branches of state government. When it is sued, it hires its own counsel. It is not treated as a state agency by the Attorney General, the State Auditor, or the Treasurer, nor is it under the control or supervision of the Administrative Office of the Courts. Although its budget has recently been approved by this Court, it is not subject to the approval of the Legislature.

Further, the Bar conducts a number of activities not related to its regulatory functions in the admission and discipline of attorneys. The Bar provides a number of public services, such as numerous professional educational courses and seminars, a lawyer referral program, and public education programs. It staffs small claims courts, publishes a newsletter containing educational and disciplinary information, and collects funds through a voluntary program which are used to reimburse clients for financial losses caused by the unethical conduct of lawyers. The Bar has acquired, operates, and maintains the Law and Justice Center. The acquisition was accomplished entirely without governmental funds.

The Utah Constitution assigns to this Court the power to "govern the practice of law." Article VIII, § 4. We need not, and therefore do not, decide whether that grant ousts the Legislature from all control over the Bar or whether the Records Act and Writings Act would be unconstitutional if applied to the Bar. We decide only that, as written, those acts do not apply to the Bar because it is not a "state agency" or "public office" within the meaning of those acts.

Because the judgment of the trial court must be reversed, it follows that the plaintiff is not entitled to attorney fees or exemplary damages.

Reversed in part; affirmed in part.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

---

**2.** It was of no consequence in *Keller* that the California Legislature approved the budget of the California State Bar. *See Keller v. State Bar of California,* 495 U.S. ——, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990).

**3.** The Bar's present facility was financed by contributions and fees paid by Bar members, by contributions from the public and charitable trusts, and by a mortgage loan from a bank.