2012 UT 81

**In the Matter of the DISCIPLINE OF Donald D. GILBERT, Jr., Respondent and Third–Party Plaintiff,**

v.

**UTAH DOWN SYNDROME FOUNDA-TION, INC., a Utah Not–for–Profit Corporation, Petitioner and Third–Party Defendant.**

No. 20110004.

Supreme Court of Utah.

Dec. 4, 2012.

Rehearing Denied April 22, 2013.

E. Barney Gesas, Lynn O. Poulson, Lehi, for respondent.

Russell A. Cline, Salt Lake City, for petitioner.

Justice PARRISH, opinion of the Court:

### INTRODUCTION

¶ 1 This appeal requires us to decide whether Donald D. Gilbert, Jr. may file a third-party complaint to implead the Utah Down Syndrome Foundation (Foundation) into his attorney discipline proceeding.[1]

¶ 2 After the Utah State Bar's Office of Professional Conduct (OPC) began an attorney discipline proceeding against him, Mr. Gilbert moved to implead the Foundation pursuant to rule 14(a) of the Utah Rules of Civil Procedure. The district court granted the motion. The Foundation filed a motion for summary judgment challenging the propriety of impleader and claiming that res judicata barred the causes of action in Mr. Gilbert's third-party complaint. The district court denied the motion. The Foundation requested, and received, interlocutory review of the district court's order.

¶ 3 We hold that the Standards for Imposing Lawyer Discipline (Standards) do not permit litigation of collateral matters in attorney disciplinary proceedings. Because impleader was not proper, we reverse the district court's denial of summary judgment.

### BACKGROUND

¶ 4 The Foundation is a nonprofit corporation that has operated in Utah since the

---

1. This case was argued with a companion case, *Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n,* No. 20110205.

1970s. The Foundation has fourteen county chapters. Only the Utah County and Salt Lake County Chapters are at issue in this case. The Utah County Chapter operates under the name Up With Downs. The Salt Lake County Chapter operates under the name Uptown Downs.

¶ 5 In the fall of 2006, the officers of Up With Downs and Uptown Downs failed to comply with a request for accounting from the Foundation. On October 20, 2006, the Foundation terminated the officers of Up With Downs and Uptown Downs. The conflict between the Foundation and its chapters spawned two lawsuits.

¶ 6 Mr. Gilbert was retained by Eric Holman and Melanie Taylor to file claims on behalf of the Foundation, Up With Downs, and Uptown Downs. As counsel of record, he filed a lawsuit on January 5, 2007 (First Action) (No. 070900363).[2] The First Action sought a declaratory judgment that Suzanne Smith, and other officers of the Foundation, lacked authority to act on behalf of the Foundation. Ms. Smith and the other officers of the Foundation moved for summary judgment, arguing that the plaintiffs were not authorized to sue on behalf of the Foundation. The district court granted the motion, holding that "[n]either Utah Down Syndrome Foundation, Up With Downs nor Uptown Downs authorized the filing of [the] action." It also concluded that "Eric Holman and Melanie Taylor did not have authority to act on behalf of [the] Foundation, Up With Downs or Uptown Downs."

¶ 7 On February 3, 2007, the Foundation filed a lawsuit (Second Action) (No. 070902087) against the former officers of Up With Downs and Uptown Downs (Second Action Defendants). The Second Action sought the accounting and return of Foundation funds held by the two chapters. The Foundation filed a partial motion for summary judgment. In a May 3, 2007 order (May 3rd Order), the district court held the Second Action Defendants lacked authority to act under the name of the Foundation or its "dbas" Up With Downs or Uptown Downs. It then ordered, inter alia, that the Second Action Defendants return all funds taken from accounts in Zions Bank and American First Credit Union after October 20, 2006, and enjoined them from further accessing those accounts.

¶ 8 After issuance of the May 3rd Order, Mr. Gilbert received $30,000 in attorney fees paid from Up With Downs's American First Credit Union account and Uptown Downs's Zions Bank account. The Foundation filed a motion, asking that Mr. Gilbert be required to disgorge the funds. The district court granted the motion and ordered Mr. Gilbert to pay the Foundation $30,000 plus accrued interest. It also awarded attorney fees to the Foundation.

¶ 9 Ms. Smith, then-President of the Foundation, filed an informal complaint against Mr. Gilbert with the OPC. Following investigation and screening, the OPC filed a formal disciplinary proceeding in the district court, alleging that Mr. Gilbert had violated five Rules of Professional Conduct, including rule 1.7 (conflict of interest); rule 1.15(e) (safekeeping property); rule 3.4(c) (fairness to opposing party and counsel); rule 8.4(a) (misconduct); and rule 8.4(d) (misconduct).

¶ 10 In the course of the disciplinary proceeding, Mr. Gilbert filed a third-party complaint pursuant to rule 14 of the Utah Rules of Civil Procedure impleading the Foundation as a third-party defendant. Mr. Gilbert's third-party complaint sought a declaratory judgment that Up With Downs and Uptown Downs are organizations independent from the Foundation. The complaint also requested a declaratory judgment that the May 3rd Order had no binding effect on Mr. Gilbert. In the alternative, the complaint requested that, if the declaratory judgment is denied and Up With Downs and Uptown Downs are deemed to be "dbas" of the Foundation, that the Foundation pay Mr. Gilbert's attorney fees for services rendered to the two chapters.

¶ 11 The Foundation filed a motion to dismiss Mr. Gilbert's third-party complaint pur-

---

2. Eric Holman was an officer of Up With Downs. Melanie Taylor was a "signor on the Zions Bank Account" and a director of Uptown Downs.

suant to rule 12(b)(6) of the Utah Rules of Civil Procedure or, in the alternative, a motion for summary judgment. The Foundation argued that Mr. Gilbert could not implead the Foundation because the OPC had not made a claim for money damages. In the alternative, the Foundation argued that res judicata and/or collateral estoppel barred the claims in Mr. Gilbert's third-party complaint. Mr. Gilbert opposed the merits of the motion and challenged its timeliness.

¶ 12 The district court denied the Foundation's motion. It construed the motion as one for summary judgment and thereby avoided Mr. Gilbert's claim that the motion was untimely under rule 12(b)(6). The district court then determined that Mr. Gilbert had properly impleaded the Foundation because the OPC had alleged that Mr. Gilbert had no right to receive the funds paid to him by Uptown Downs and Up With Downs and because Mr. Gilbert sought to clarify his right to the funds. Finally, the district court denied the Foundation's res judicata and collateral estoppel claims on the grounds that the Foundation had failed to provide adequate analysis of how they applied in this case.

¶ 13 After the district court denied the Foundation's motion, the OPC moved to stay the disciplinary proceedings pending resolution of the third-party complaint. The district court granted the motion. On January 3, 2011, the Foundation filed a petition for interlocutory appeal with this court. We granted the petition. We have jurisdiction pursuant to section 78A–3–102(3)(c), (j) of the Utah Code.

## STANDARD OF REVIEW

 ¶ 14 We review for an abuse of discretion a district court's decision granting or denying impleader under rule 14 of the Utah Rules of Civil Procedure.[3] *Red Flame, Inc. v. Martinez,* 2000 UT 22, ¶ 6 n. 2, 996 P.2d 540. The district court abuses its dis-

cretion if it commits legal error. *See Goggin v. Goggin,* 2011 UT 76, ¶ 26, 267 P.3d 885.

## ANALYSIS

### I. THE DISTRICT COURT ABUSED ITS DISCRETION BY PERMITTING MR. GILBERT TO IMPLEAD THE FOUNDATION INTO AN ATTORNEY DISCIPLINE PROCEEDING

¶ 15 Rule 14(a) of the Utah Rules of Civil Procedure states:

> At any time after commencement of [an] action a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

¶ 16 The Foundation argues that Mr. Gilbert's attempt to implead it was improper because the OPC did not seek money damages from Mr. Gilbert and because Mr. Gilbert made no claim for damages against the Foundation. The Foundation also argues that only Mr. Gilbert can be liable for any disciplinary sanction that may be imposed on him through an attorney discipline proceeding.

¶ 17 Mr. Gilbert responds that the absence of a claim for money damages in the OPC's complaint against him does not preclude a third-party complaint against the Foundation. Alternatively, he argues that the OPC's claim rests on an allegation that he improperly retained attorney fees and therefore it does, in fact, involve a monetary claim. Mr. Gilbert then proceeds to address the merits of the two issues raised in his third-party complaint. First, he argues that he is entitled to a declaratory judgment that Uptown Downs and Up With Downs are independent business entities and that he properly received attorney fees from them. Second, he argues that if Uptown Downs and Up With Downs are "dbas" of the Foundation, then the Foundation is liable to com-

---

**3.** Mr. Gilbert contends that the Foundation failed to properly marshal the evidence in its appeal to this court. Rule 24(a)(9) of the Utah Rules of Appellate Procedure requires that "[a] party challenging a fact finding must first marshal all

record evidence that supports the *challenged* finding." (Emphasis added.) However, because the Foundation does not challenge any of the district court's factual findings, it had no marshaling obligation.

pensate him for unpaid legal services. Finally, Mr. Gilbert argues that impleading the Foundation is appropriate because it would avoid the risk of inconsistent judgments.

¶ 18 While the parties focus their arguments on the propriety of impleader under rule 14, this case presents a more fundamental question of whether impleader may ever be used in attorney discipline proceedings. To resolve this question, we examine the authority for and the history of attorney discipline proceedings in Utah.

### A. Third–Party Actions Were not Used in Attorney Discipline Proceedings Prior to the Adoption of the Standards for Attorney Conduct

¶ 19 Prior to 1985, "the power to regulate the practice of law was inherent in the judicial power conferred on this Court by Article VIII section 1 of the Utah Constitution."[4] *In re McCune,* 717 P.2d 701, 704 (Utah 1986, *abrogated on other grounds by Monson v. Carver,* 928 P.2d 1017 (Utah 1996)). In 1931, the Legislature officially recognized the Utah State Bar, and gave it authority to recommend to the Supreme Court discipline for lawyers. *See* 1931 Utah Laws 16869. We thereafter continued to regulate the practice of law under the 1931 Act and our inherent judicial power. *See Barnard v. Utah State Bar,* 804 P.2d 526, 528 (Utah 1991); *McCune,* 717 P.2d at 704–05. In 1985, article VIII of the Utah Constitution was amended and we were given explicit constitutional authority to "govern the practice of law, including ... discipline of persons admitted to practice law." UTAH CONST. art. VIII, § 4.

¶ 20 Under our power to regulate the practice of law, we have permitted various methods for adjudicating attorney discipline. Prior to the recognition of the Bar, we appointed local attorneys to enter findings of facts. *See, e.g., In re Hanson,* 48 Utah 163, 158 P. 778, 778 (1916) ("[T]his court appointed E.O. Lee, a member of the bar of this court, ... directing him to hear the evidence offered by both sides and to report his find-

ings and conclusions to this court."). After the Legislature's recognition of the Bar, we gave the Board of Commissioners of the Utah State Bar the task of supervising attorney discipline. *See In re McCullough,* 97 Utah 533, 95 P.2d 13, 14 (1939). Specifically, we gave the Bar the responsibility to "perform[ ] essential functions in investigating complaints, adjudicating facts, and recommending discipline." *In re Knowlton,* 800 P.2d 806, 808 (Utah 1990).

¶ 21 Under the framework of either Bar or appointed attorney supervision, impleader would not have been possible in attorney discipline proceedings because neither the Bar nor supervising attorneys possessed the jurisdictional authority to implead third parties or adjudicate collateral matters. Moreover, the Rules of Civil Procedure, which allow for impleader, did not apply in these proceedings. *See infra,* ¶ 25.

### B. The Standards Do not Permit Impleader in Attorney Discipline Proceedings

¶ 22 In 1993, we adopted the Standards, which substantially altered the framework for attorney discipline cases. Under the Standards, the forum for formal bar complaints was transferred from the Board of Bar Commissioners to the district courts. *See In re Babilis,* 951 P.2d 207, 208 (Utah 1997); *In re Cassity,* 875 P.2d 548, 548 n. 1 (Utah 1994). Attorney discipline cases are currently adjudicated under this framework.

¶ 23 Attorney disciplinary proceedings present a unique type of civil case. *See* SUP.CT. R. PROF'L PRACTICE 14–501(c). The stated purpose is to

> ensure and maintain the high standard of professional conduct required of those who undertake the discharge of professional responsibilities as lawyers and to protect the public and the administration of justice from those who have demonstrated by their conduct that they are unable or un-

---

4. Effective July 1, 1985, voters repealed Article VIII of the Utah Constitution and enacted a new judicial article, which gives the Utah Supreme Court explicit authority over attorney discipline proceedings. UTAH CONST. art. VIII, § 4.

likely to properly discharge their professional responsibilities.

*Id.* 14–501(a).

¶ 24 The Standards apply to those subject to the "disciplinary jurisdiction of the Supreme Court" and were written to focus on disciplining attorneys for alleged misconduct. *Id.* 14–506(a). The Standards were "not intended to create grounds for determining culpability independent of the Rules of Professional Conduct." *Id.* 14–602(d).

¶ 25 The Standards note that "[e]xcept as otherwise provided ... the Utah Rules of Civil Procedure ... apply in formal discipline actions." *Id.* 14–517(a). However, the Standards recognize that claims arising in disciplinary proceedings may involve related litigation. In these situations, the Standards provide that disciplinary proceedings "may be stayed because of substantial similarity to the material allegations of a pending criminal, civil, or disciplinary action." *Id.* 14–517(d). Thus, the Standards implicitly recognize that attorney discipline proceedings should be litigated separately from other claims. We have previously recognized that disciplinary proceedings are

> not ... proceeding[s] to determine conflicting claims of right where one party prevails over the other. [A] proceeding is commenced by an accusation being made of misconduct where no specific relief is demanded or requested.... The action is not an action at law in the strict sense nor a suit in equity.

*In re Strong,* 616 P.2d 583, 585–86 (Utah 1980).

¶ 26 Both the historical context and the Standards indicate the unique, separate nature of attorney discipline cases. Under the current Standards, disciplinary proceedings are tried under supervision of district courts, who are to enter "findings of facts and conclusions of law." Sup.Ct. R. Prof'l Practice 14–511(e). This is the same function that the Board of Commissioners of the Utah State Bar performed prior to the adoption of the Standards. Although the Standards designate district courts as the forum for attorney discipline proceedings, they do not envision that the scope of the attorney disciplinary proceedings be expanded through application of the impleader rule to include the litigation of matters collateral to the disciplinary action.

¶ 27 Allowing impleader of collateral matters in attorney discipline proceedings is simply not consistent with the unique nature of our attorney discipline system. As noted above, the Standards were written to narrowly focus on attorney discipline, and did not contemplate the litigation of collateral matters in the same proceeding. *See* Sup.Ct. R. Prof'l Practice 14–506(a). And allowing impleader would create the potential for attorneys to disrupt disciplinary proceedings by injecting collateral matters. Furthermore, allowing impleader is not necessary. Rule 14–517(d) of the Standards provides that disciplinary proceedings may be stayed pending resolution of "substantial[ly] similar[ ]" matters. This rule furthers judicial efficiency by ensuring that attorney discipline proceedings be heard apart from any collateral matters and additionally guards against the risk of inconsistent judgments that would arise should matters be litigated separately yet simultaneously. Finally, maintaining a narrow focus for disciplinary proceedings protects those who file complaints against attorneys inasmuch as a client or other complainant who fears being brought into a case as a third-party defendant may be discouraged from filing an otherwise legitimate complaint.

¶ 28 We hold that the district court abused its discretion by allowing Mr. Gilbert to file a third-party complaint in a disciplinary proceeding. Because we conclude that impleader is never proper in such proceedings, we do not address the other issues raised by the parties. However, by denying impleader in this case, we do not dismiss Mr. Gilbert's third-party complaint on its merits. Rather, Mr. Gilbert may pursue his third-party complaint in an independent action. We also note that, pursuant to rule 14–517(d) of the Standards, Mr. Gilbert's disciplinary proceeding may be stayed pending resolution of any such action.

## CONCLUSION

¶ 29 We hold that the district court abused its discretion by allowing Mr. Gilbert's third-

party complaint to proceed. Neither the historical nor current framework for adjudicating attorney discipline cases allows litigation of collateral matters in an attorney disciplinary action. We reverse the district court's denial of the Foundation's motion to dismiss or, in the alternative, motion for summary judgment, and remand this matter to the district court.

Justice PARRISH authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice DURHAM, and Justice LEE joined.